BLISS FURNITURE CO. *v.* NORRIS.

1. CONTRACTS—SALE—MUTUALITY.

An agreement by A. to furnish certain materials to B. within a stated time in case B. should give an order therefor is void for want of mutuality.

2. SAME—ORDER AND ACCEPTANCE—TIME OF DELIVERY.

Where B. ordered certain materials of A., to be delivered by a specified date, and A. replied that he could not guarantee as to time, but would do the best he could, there was no contract to deliver within the time mentioned in the order, and hence A. was not liable in damages because shipment was delayed beyond that time.

Appeal from Kent; Wolcott, J. Submitted October 9, 1901. Decided December 3, 1901.

Petition by the Bliss Furniture Company against Mark Norris, receiver of the I. L. Quimby Factory, to establish an equitable set-off. From a decree for petitioner, respondent appeals. Reversed.

*Walter I. Lillie*, for petitioner.

*Crane, Norris & Drew*, for respondent.

MOORE, J. In May, 1900, Mr. Norris, as receiver, brought two suits in justice's court against the Bliss Furniture Company. A judgment was entered in both cases against the Bliss Furniture Company. The defendant in those cases appealed them to the circuit court, where they are still pending. Thinking it could not avail itself of its claim of set-off in the law cases, this bill was filed, asking for an accounting with the receiver, and to have its claim of set-off allowed, and the prosecution of the law cases restrained. The receiver answered the bill, denying the right of the complainant to any recoupment for several reasons. The answer, among other things, says:

"That, although said set-off as claimed by petitioner is fully cognizable at law, yet the respondent, as an officer of the court, is willing that the question of the allowance of said set-off be determined by the equity side of the court."

The case was heard in open court, where the circuit judge entered a decree allowing the claim of complainant's set-off. The receiver, by permission of the circuit judge, has brought the case here by appeal.

There are many questions raised by counsel, but, as one of them is decisive, the others will not be discussed. Prior to September, 1899, the I. L. Quimby Factory, of Grand Rapids, was in the hands of Mr. Uhl as assignee. Mrs. Morley was manager of the business for the assignee. September 6, 1899, the Bliss Furniture Company made a contract with the Macey Company to furnish it certain bookcases and desks for its holiday trade. It is the claim of the Bliss Furniture Company that, previous to making this contract, it had made an agreement with Mrs. Morley, acting for the Quimby Company, to furnish it with certain material to enable it to fulfill the contract, then in contemplation, to be made with the Macey Company, which was made, as before stated, September 6th; that the Quimby Furniture Company failed to furnish this material· in time to enable the Bliss Furniture Company to furnish the Macey Company with the desks and bookcases according to the terms of the contract, making it necessary for the Macey Company to incur expenses for telegraphing to their customers to whom they sold desks and bookcases, and compelling them to send goods by express where they otherwise could have shipped by freight. It is claimed this additional expense amounted to $241.81, and was allowed the Macey Company by the Bliss Furniture Company, and the claim is it should be allowed the Bliss Furniture Company as a set-off against the claim of the receiver.

We think, giving the most liberal interpretation to the testimony of Mr. Bliss as to what occurred between him

and Mrs. Morley, it did not constitute a contract. The conversation occurred in August. It was had in view of the fact that negotiations were then going on looking to a contract with the Macey Company. Mr. Bliss did not then know he should make the contract. He did not agree with Mrs. Morley to take any material. She did not agree to furnish any, but, in reply to his inquiry as to whether she could furnish the material if the contract was made, to use the language of Mr. Bliss, "she said she could take care of us nicely." No order was then given or accepted. The talk did not constitute a contract, for it lacked mutuality. Mr. Bliss says that Mrs. Morley agreed to get the goods out at a certain time if he gave her the order. What did he agree to do? Nothing. He was under no obligation to give an order, or to take and pay for a stick of material, by virtue of that talk. *Wilkinson* v. *Heavenrich*, 58 Mich. 574 (26 N. W. 139, 55 Am. Rep. 708); *Bailey* v. *Austrian*, 19 Minn. 535; *Campbell* v. *Lambert*, 36 La. Ann. 35 (51 Am. Rep. 1); *Houston, etc., R. Co.* v. *Mitchell*, 38 Tex. 85.

The contract with the Macey Company was, as before shown, made September 6, 1899. No order was sent to Mrs. Morley until September 25, 1899, nearly a month after the talk in August, when the Bliss Company sent a written order to the Quimby Company. This order covers four sheets of paper, and minutely specifies the sizes, dimensions, quantities, style, and dates of delivery of the different materials ordered. The dates specified are November 1, November 15, and December 1, 1899. The Quimby Company acknowledged receipt of this order the same day by a letter in part as follows:

"OFFICE OF I. L. QUIMBY FACTORY.
     "C. S. MORLEY, MANAGER.
          "GRAND RAPIDS, MICH., Sept. 25, 1899.
"BLISS FURNITURE COMPANY,
          "Grand Haven, Mich.
     "*Gentlemen:*   *   *   *   We have also your orders of the 25th for desk falls and backs and dr. bots., and we will do our best to fill the order as quickly as possible; but as

you did not place the order as soon as you intended, we cannot guarantee to get it out complete by the 1st of November; but, as we said before, we will do our best. * * *

"Yours very truly,

"C. S. Morley."

The Bliss Company acknowledged receipt of this letter on September 26, 1899, and do not object to the modification of their order as to date of delivery. Other correspondence followed. In a letter dated November 21, 1899, the Bliss Furniture Company said to the I. L. Quimby Factory:

"You are aware that we are under contract to supply these goods to Mr. Macey at a given date, and, although we did not place our order as soon as expected, yet we feel that you have had time enough to have done something for us on this particular stock. We do not wish to complain, but we do wish you to realize how important it is for us to have these goods. We trust you will do something for us immediately, and not only send us the 50 sets at once, but send us 300 sets."

The goods were manufactured and sent on from time to time, but not soon enough to enable the Bliss Furniture Company to fulfill its contract with the Macey Company. On the 15th of February, 1900, a statement was sent by the receiver to the Bliss Furniture Company, showing $332.57 to be due. Mr. Bliss indorsed upon the same a claim for maple furnished and for damaged goods and repairs, amounting to $31.67, and sent the note of the company for the balance, amounting to $300.90, which is the note sued upon in one of the suits in justice's court.

As before said, we do not think the oral conversation between Mr. Bliss and Mrs. Morley amounted to a contract. The agreement between these two companies is to be found in the correspondence; and, in reply to the letter giving the order, the Bliss Company were told that, because of their delay, the Quimby Company would not guarantee to furnish the material at the time mentioned in the letter. We think the court erred in allowing the set-off.

The decree will be modified to that extent, and affirmed, with costs of both courts to the receiver.

MONTGOMERY, C. J., HOOKER and LONG, JJ., concurred. GRANT, J., did not sit.