GERVICKES *v.* ROYAL EXCHANGE ASSURANCE CO.

1. APPEAL AND ERROR—EXCEPTIONS TO FINDINGS—QUESTIONS FOR REVIEW.

 Where, in a case tried before the court without a jury, exceptions to the findings of the court were not filed within four days, as required by Circuit Court Rule No. 45, § 3, errors assigned thereon may not be considered by the Supreme Court, but under defendant's motion for a directed verdict on the ground that plaintiff failed to make a *prima facie* case by any competent testimony, it remains for the court to consider whether certain essential facts found are sustained by any competent evidence.

2. EVIDENCE—MORTGAGES—ORAL EVIDENCE—DEED AS MORTGAGE.

 Oral evidence is admissible to show that a deed absolute upon its face, was in fact given as security only, and therefore is, in effect, a mortgage.

3. INSURANCE — FIRE INSURANCE—VIOLATION OF POLICY WITHOUT INJURY TO INSURER DOES NOT AVOID IT—STATUTES.

 Under 2 Comp. Laws 1915, § 9481, a deed given by insured as security merely, although without notice thereof to the insurer as provided for in the policy, did not avoid

On effect of mortgage or instrument given as security as breach of condition as to sole and unconditional ownership, see note in L. R. A. 1915D, 812.

On effect of condition against incumbrances, upon renewal, substitution, or alteration of incumbrance upon insured property, see note in 20 L. R. A. 400.

the policy in the absence of evidence that the insurer was injured thereby.

4. SAME—PRINCIPAL AND AGENT—WAIVER.

Where plaintiff presented his claim for loss to the agency issuing the policy which made out proofs of loss and presented them to defendant's adjuster, who wrote plaintiff that "no proof purported or otherwise could be accepted when signed by you, since you do not appear to be the owner of the property," defendant's contention that those so acting as its agents had no authority to waive notice or compliance by the insured with requirements as to proofs of loss, appraisal, arbitration, etc., is without merit.

Error to Kent; Perkins (Willis B.), J. Submitted October 18, 1922. (Docket No. 127.) Decided March 22, 1923.

Assumpsit by John A. Gervickes against the Royal Exchange Assurance Company of London, England, on a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Frederick J. Ward*, for appellant.

*John M. Dunham*, for appellee.

STEERE, J. Defendant seeks reversal of a judgment against it based on a fire loss under a $1,000-insurance policy which it had issued to plaintiff covering a frame dwelling house located at 515 Webster street, Grand Rapids. The policy was issued January 2, 1916. The fire occurred November 11, 1918, resulting in a total loss. This action was begun in the circuit court of Kent county on June 19, 1919. The case was tried before the court without a jury. Findings of fact with conclusions of law thereon were filed by the court on May 10, 1921, followed by entry of judgment on the same date in favor of plaintiff. Omitting formal parts they are as follows:

"1. That on January 2, 1916, defendant, the Royal Exchange Assurance Company of London, England, a foreign corporation, in consideration of premiums paid and to be paid by the plaintiff, issued to him its policy No. 4851685, and insured his property at 515 Webster street, N. W., Grand Rapids, Michigan, against loss or damage by fire to the amount of one thousand dollars ($1,000.00).

"2. That at the time said policy was issued, plaintiff held title to the property, that it was used as a dwelling house and insured as such, and the character of such use was never materially changed. The property was subject to a mortgage of $1,000, and had been sold on a land contract which had been abandoned and terminated by the vendees prior to the fire in question, and that due notice of said mortgage and said contract was had by the defendant.

"3. That the policy in question was issued on behalf of defendant by the Grand Rapids Insurance Agency, its agent, and was procured by one Frank D. McKay, a licensed broker representing said agency.

"4. That prior to the fire in question which destroyed the property and upon which this action is founded, a small loss occurred on the premises which was taken up for adjustment by Mr. Blickle of the Grand Rapids Insurance Agency and by Mr. McKay; that proofs of loss were filed with Mr. Blickle, the loss was passed upon by Blickle and McKay, and the defendant insurance company paid the loss as adjusted by them, in the sum of $15, which payment reduced the principal amount of the policy in that sum.

"5. That prior to July 12, 1918, plaintiff had been indebted to one Archibald B. McKay, in the sum of $500; that to pay his taxes, etc., plaintiff, through Frank D. McKay, borrowed from the latter's brother, Archibald B. McKay, the further sum of $150; that prior to this time, plaintiff had given said McKay an assignment of a land contract and a deed to certain property and after the further advance of $150 to plaintiff, he gave the said Archibald B. McKay an assignment of the land contract and a deed of the property insured by defendant; that, although absolute on its face, it was agreed by the parties that it was to be held merely as collateral to secure said Archibald B. McKay.

"6. That Frank D. McKay, the representative of the Grand Rapids Insurance Agency, agent for the defendant, had knowledge of all these transactions; that he handled plaintiff's business affairs, and secured the advance by the said Archibald B. McKay and secured the assignment and deed in question to secure his said brother.

"7. That on November 11, 1918, a fire occurred, resulting in a total loss, within the meaning of the policy; that at that time plaintiff was pastor of a Catholic church in the city of Saginaw; that he was notified of the loss by the said Frank D. McKay, who, on behalf of plaintiff, procured blanks from the Grand Rapids Insurance Agency, had them filled out and filed them with Mr. Blickle of the Grand Rapids Insurance Agency, at the latter's request; that these proofs of loss were later turned over to the Western Adjustment and Inspection Company, adjuster for the defendant insurance company, who, on March 10, 1919, through its manager, Mr. Reilly, denied liability on behalf of defendant and refused to pay the loss.

"8. That at the time of this loss, plaintiff had an interest in the insured property to the amount of one thousand dollars ($1,000.00) and upwards.

"9. That the mortgage(e), although protected by a full contribution clause in the policy, never brought any action to recover under it, nor did he ask to join or intervene in this case; that by the terms of the policy, suit must be brought within a definite time which has long since passed.

"10. That this loss became due and payable at the time of the refusal, by defendant's agent, to pay said loss, which amounted to the principal sum named in the policy as reduced by the first loss paid, to wit, nine hundred eighty-five ($985.00) dollars, interest upon that amount from that date amounting to one hundred nine dollars and twelve cents ($109.12).

"Conclusions of Law.

"I find and conclude as a matter of law:

"1. That the terms and conditions of the policy had been complied with, and at the time of the loss the policy was in full force and effect.

"2. That the loss suffered by plaintiff was covered by the policy and the defendant is liable to plaintiff under said policy.

"3. That the amount due plaintiff, together with interest to date amounts to one thousand ninety-four dollars and twelve cents ($1,094.12), with costs to be taxed.

"Let judgment be entered accordingly."

No proposed amendments to the court's findings of fact and conclusions of law were filed or points of law presented to the court in writing, as upon requests to charge, at any time so far as this record discloses. No motion was made for a new trial. On May 16, 1921, a motion was granted extending time for settling bill of exceptions 60 days. No exceptions to the court's findings and conclusions were filed until September 15, 1921, over four months after judgment was entered. They were in blanket form as follows:

"The defendant Royal Exchange Assurance Company does hereby except to the findings of fact and conclusions of law as found by the court in the above entitled action."

These exceptions not only fail to point out any particular error to which the attention of the court is directed or grounds for taking them, but they were not filed within four days after the completed findings were filed, and judgment entered, as required by section 3 of Circuit Court Rule No. 45.

Counsel for plaintiff contend that owing to non-compliance with the prerequisites for review imposed by rule No. 45 defendant's technical grounds of error are not properly before the court for review. As to most if not all the questions defendant seeks to raise this objection is well taken. The mandatory requirements of rule No. 45 have been so often and fully discussed by this court that it seems sufficient to refer to a few of the later cases upon that subject where the force and effect of that rule is declared: *Cascarelli* v. *Railroad Co.*, 202 Mich. 304; *Engel* v. *Tate*, 203 Mich. 679; *Marshall & Ilsley Bank* v. *Mooney*, 205 Mich.

518; *Messer* v. *Dornbos*, 210 Mich. 46; *Curry* v. *Shears*, 216 Mich. 699; *Murphy* v. *Bonewell*, 218 Mich. 171.

In the *Curry Case* it is said:

"Defendant's exceptions to the findings were not filed within four days as required by this rule (45). This precludes us from considering whether the findings are against the clear weight of the evidence as is required, when exceptions are properly taken, by sections 14 and 15 of chapter 18 of the judicature act (3 Comp. Laws 1915, §§ 12586, 12587). The only question therefore open to us to review is whether the findings of fact support the judgment. *Rameau* v. *Valley*, 168 Mich. 569. See, also, *Simon* v. *Zarevich*, 213 Mich. 662, and cases therein cited."

In the *Mooney Case,* pointing out that for failure to comply with Rule No. 45 the errors assigned upon the findings of the court could not be considered, it is said:

"It remains to consider whether the refusal to strike out the testimony for plaintiff and dismiss the case was reversible error."

The facts found by the court support the judgment, but under defendant's motion for a directed verdict on the ground that plaintiff failed to make a *prima facie* case by any competent testimony, it seems to remain for the court to consider whether certain essential facts found are sustained by any competent evidence. Two points strenuously urged for defendant are the evidence of agency on the part of those claimed by plaintiff to have represented defendant, and the competency of oral testimony admitted to show a deed of the premises from plaintiff to Archibald McKay was not a defeasance but only given as security for a debt. Those questions were saved by objections timely made to testimony as taken, followed by motion for directed verdict, in effect, to strike out

the claimed incompetent testimony and dismiss the case.

The policy involved here was a Michigan standard policy with notice of the $1,000 mortgage and land contract acknowledged, and containing the customary condition that, unless otherwise provided, it should be void unless the interest of the insured was other than unconditional and sole ownership in fee simple. It is urged for defendant that evidence to vary the terms of the deed from plaintiff to Archibald McKay was incompetent, especially as to a third party, and the unqualified deed of defendant stood as a palpable violation of plaintiff's policy which renders it void.

Undisputed oral evidence, supported by correspondence between Frank D. McKay, who as a licensed broker secured the insurance for the Grand Rapids Insurance Agency, and plaintiff, shows that the deed was given as collateral security in the nature of a mortgage to a note for money loaned to plaintiff.

In 4 Joyce on Insurance (2d Ed.), § 2259, it is said:

"Under a condition in the policy that in case of any sale, transfer, or change of title in the property insured such insurance shall be void and cease, it has been held that a merely nominal transfer as collateral security for debts which are liens on the property will not avoid the policy."

"A deed absolute in form, but in fact given simply as security for a debt, does not convey the title, but is, both at law and in equity, a mortgage only. Where, therefore, a policy of fire insurance contained a condition to the effect that a sale or transfer of the property sold or any change in the title without the consent of the company would avoid the policy, *held,* that a deed of the property, executed simply to secure a debt, was not within the condition and did not affect the policy." *Barry* v. *Insurance Co.,* 110 N. Y. 1 (17 N. E. 405).

Upon the proposition that oral evidence is admis-

sible, *vide*, also, 22 C. J. p. 1293, and Michigan cases there cited; Potter on Michigan Evidence, § 361; *Jeffrey* v. *Hursh*, 49 Mich. 31; *Matthews* v. *Forslund*, 112 Mich. 591.

Furthermore, under the law as it existed when this policy was issued (2 Comp. Laws 1915, § 9481), this increase of incumbrance could not be declared to render the policy void unless defendant was injured by reason of it, and there is no finding or evidence in the case that such result followed. *McPhee* v. *Insurance Co.*, 198 Mich. 215; *Lagden* v. *Insurance Co.*, 188 Mich. 689, 206 Mich. 341; *Lindemann* v. *Insurance Co.*, 217 Mich. 698.

As to the question of agency and authority to waive notice or compliance by the insured with requirements as to proofs of loss, appraisal, arbitration, etc., it is undisputed that the Grand Rapids Insurance Agency was agent of defendant and as such issued this countersigned policy. Frank D. McKay testified:

"I prepared and filed proof of loss with Mr. Blickle of the Grand Rapids Insurance Agency. I acted for Father Gervickes at the time. I had the estimate made and proofs of loss filed at the request of Mr. Blickle. * * * I think Mr. Blickle made out most of the proofs and left a part of it that he asked me to fill in."

The adjuster referred to in paragraph 7 of the court's findings is identified in the testimony as an adjuster named Reilly. Of him counsel for defendant stated during the trial: "Mr. Reilly, of the Western Adjustment Company, who is now dead, * * * he represented the company in this loss."

Frank McKay was permitted to testify that after giving the proofs of loss to Blickle he next saw them in the hands of Reilly who told him he was instructed to say that the claim would not be paid because of the condition of the title. This testimony was

strenuously objected to as matter equally within the knowledge of the deceased. Conceding its incompetency, there yet remains in the record competent testimony of defendant's refusal to recognize the claim. Blickle of the Grand Rapids agency so stated to McKay, and plaintiff received a registered letter from Reilly advising him that this purported proof of loss was rejected and "No proof purported or otherwise could be accepted when signed by you, since you do not appear to be the owner of the property." This letter was signed "Western Adjustment & Inspection Company, by James C. Reilly, Manager its Grand Rapids, Mich., Branch, Adjuster for Royal Exchange Assurance Company of London, England."

We find no reversible error and the judgment will stand affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE, J., did not sit.